UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ERIE INSURANCE COMPANY,

                       Plaintiff,

    -v-                                  5:20-CV-1282

FRANK McKAY; WILLIAM LANSBURY;
and AMY McKAY,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
WILLIAM LANSBURY and AMY McKAY,

                  Counter Claimants,

    -v-

ERIE INSURANCE COMPANY,

                  Counter Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                 OF COUNSEL:

HURWITZ & FINE, P.C.-BUFFALO    STEVEN E. PEIPER, ESQ.
Attorneys for Plaintiff and Counter
    Claimant Erie Insurance Company
1300 Liberty Building
424 Main Street
Buffalo, New York 14202

BARCLAY DAMON LLP-ROCHESTER   SANJEEV
Attorneys for Defendant Frank McKay    DEVABHAKTHUNI, ESQ.
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604

MICHAELS, SMOLAK LAW FIRM      JAN M. SMOLAK, ESQ.
Attorneys for Defendants and Counter
    Claimants William Lansbury and
    Amy McKay
17 East Genesee Street-Suite 401
Auburn, New York 13021

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

On October 16, 2020, plaintiff Erie Insurance Company ("Erie" or "plaintiff") filed a complaint in this District. Plaintiff requests a declaratory judgment that it is not obliged to provide coverage or a defense for defendant Frank McKay ("Frank") in his own efforts to defend himself against defendants William Lansbury ("Lansbury") and Amy McKay ("Amy") (the "claimants").

The claimants were both injured on August 12, 2018[1] in an accident involving a boat Frank had been piloting. From Erie's perspective, that accident is subject to a coverage exclusion that relieves it from defending Frank and compensating claimants. But according to Frank and claimants, plaintiff waited far too long in disclaiming coverage, and should be foreclosed

---

[1] There is a slight disagreement as to when the accident took place. Claimants put the date at August 11, 2018, while Frank and plaintiff claim it took place on August 12, 2018. The precise date is ultimately irrelevant, so the Court will use the date most of the parties use.

from leaving Frank to fend for himself now.  On December 15, 2021, both defendant and claimants filed motions for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.  On December 17, 2021, plaintiff filed a summary judgment motion of its own.  Those motions, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. <u>BACKGROUND</u>

On August 12, 2018, Amy, her husband Michael McKay ("Michael"), and their friend Lansbury arrived at Michael's mother's cottage on Lake Owasco near Auburn, New York.[2]  Dkt. 33-16, Plaintiff's Statement of Material Facts ("PSMF"), ¶¶ 1, 3, 6.  It was the day of the "Great Race" in Auburn, which apparently is accompanied by a full day of celebration.  *Id.* ¶ 1.

One participant in the festivities was Frank—Michael's brother—who spent the day out on the lake on the family boat.  PSMF ¶¶ 3, 12.  The boat was 28 feet long and equipped with a 140-horsepower motor.  *Id.* ¶ 3.  When Michael, Amy, and Lansbury arrived, Frank returned to the cottage to pick them up.  *Id.* ¶ 5.  Apparently, the whole party spent some time on the water, and at least Frank, Amy, and Lansbury drank a generous amount of alcohol as the day wore on.  *Id.* ¶¶ 7-9.

---

[2] The facts are taken from the parties' statements of material facts where admitted by the other parties or else from other record evidence.  Disputed facts are flagged and described from each party's point of view.

Eventually, everyone decided to take the boat back to Frank and Michael's mother's cottage for a cookout.  PSMF ¶ 10.  Some 300 yards from the cottage, Michael noticed a football in the water and told Frank to stop the boat so he could grab it.  *Id.* ¶ 12.  Michael dove in to retrieve the wayward ball, while Frank drove a circle around him.  *Id.* ¶¶ 13-15.  Frank watched Michael the whole time.  *Id.* ¶ 17.  Once Michael returned to the boat, he told Frank they were all set to continue the trip back to the cottage.  *Id.* ¶ 20.

As it turned out, they were not.  Apparently, claimants had jumped into the water to relieve themselves while Frank was watching Michael collect the football.  PSMF ¶ 18.  Neither remembers whether they told Frank that they were exiting the boat.  *Id.* ¶ 19.  In any case, Frank was apparently oblivious, and opened the boat's throttle.  *Id.* ¶ 21.  As the boat lurched to a start, its propeller struck Lansbury's left leg and Amy's right bicep and thumb.  *Id.* ¶ 23.

On August 21, 2018, Robin McKay ("Robin"), Frank's wife, notified Erie about the accident.  Dkt. 31-14, Defendant's Statement of Material Facts ("DSMF"), ¶ 6.  The claim was assigned to Brian Weber ("Weber"), one of plaintiff's claims agents.  PSMF ¶ 25.  Weber interviewed Robin the next day.  Dkt. 32-19, Claimants' Statement of Material Facts ("CSMF"), ¶ 6; PSMF ¶ 26.

The interview component of Weber and Robin's conversation was recorded. PSMF ¶ 26.  But apparently, Weber forgot to ask Robin who owned the boat during the recorded statement, so instead he asked her after the recording had stopped.  Dkt. 33-2 ("Weber Tr."), p. 22.[3]  As a result, Robin's exact answer has been lost to time.  *See id.* at 23.  In any case, Weber walked away from his conversation under the impression that Michael owned the boat.  *Id.* at 24.  But according to Robin, she said that she thought that Michael owned the boat, but that she was not sure.  Dkt. 33-7 ("Robin Tr."), p. 9.

The ownership of the boat is no trivial matter.  After all, Frank's homeowner's policy with Erie protects him in the event of an occurrence of bodily injury during the policy period.  Dkt. 33-9, p. 20.  However, the policy specifically excludes coverage for an injury caused by a watercraft with more than seventy-five horsepower if that watercraft is owned by the policy holder. *Id.* at 21.

Because the boat Frank was driving on August 12, 2018 had 140 horsepower, if he had owned the boat, it would have been subject to an exclusion and plaintiff would not have needed to cover him.  *See* Dkt. 33-9, p. 21.  But the converse is also true: Weber's impression from Robin that

---

[3] Pagination Corresponds with CM/ECF.

Frank did *not* own the boat led him to believe that the exclusion did not apply and that plaintiff was bound to cover the injury.  PSMF ¶ 32.

On January 9, 2019, claimants' attorney submitted a letter to Weber presenting a settlement demand.  Dkt. 32-15, p. 2.  In that letter's recitation of the operative facts, the attorney consistently referred to Frank as "Mr. McKay."  *See id.*  The fact pattern traced the outline the Court described above, but one piece of it bears emphasis.  Specifically, the letter refers to "Mr. McKay" as the "owner and operator of the boat."  *Id.*  Well below that language, the letter also describes the football falling off the boat, "which caused Mr. McKay to stop the boat so his brother, Michael, could jump off . . . ."  *Id.*  That sentence was the first reference to Michael in the letter. *See generally id.*

On February 22, 2019, more than a month after receiving the demand letter and more than five months after taking Robin's statement, Weber reached out to Frank for a statement for the first time.  Weber Tr. 25. Notwithstanding the reference to "Mr. McKay" being the boat's owner, Weber did not ask Frank who owned the boat.  *Id.* at 26.  Weber also never asked to speak to Michael.  *Id.* at 27.

On December 6, 2019, an Erie liability specialist named Keith Merkel ("Merkel") was reassigned to the McKay case.  CSMF ¶ 19.  Merkel had access to the letter from claimants' counsel no later than January 27, 2020.

CSMF ¶ 20.  Merkel came away from that letter under the impression that Michael was the "Mr. McKay" that the letter referred to as the boat's owner and operator.  Dkt. 33-3 ("Merkel Tr."), p. 18.  As a result, Merkel did not follow up with anyone involved in the accident, nor did he request the boat's title.  *Id.* at 19.

However, someone at Erie grew concerned, because on May 27, 2020, plaintiff personnel had a meeting and determined that someone should confirm the boat's ownership.  Merkel Tr. 22.  Around that time, one of plaintiff's employees asked Frank to produce the boat's title for the first time.  DSMF ¶ 12.  He promptly did.  *Id.*

On June 2, 2020, Merkel performed an information request to determine who owned the boat.  Merkel Tr. 22.  That request came back with both Frank and Michael listed as the boat's owners.[4]  *Id.*

On June 26, 2020, Erie sent Frank a letter denying coverage based on the exclusion discussed above.  DSMF ¶ 14.  On July 6, 2021, claimants sued Frank in New York State Supreme Court, Cayuga County.  *Id.* ¶ 18.  On July 15, 2021, Frank notified plaintiff of the lawsuit and demanded coverage.  *Id.* ¶ 19.

---

[4] Apparently, sometime in the five years before the accident Frank and Michael had discussed transferring ownership of the boat entirely to Michael because he wanted to have an additional asset to improve his prospects for a business loan.  PSMF ¶¶ 52-54.  However, for one reason or another, that agreed change to the title never came about.  *Id.* ¶ 56.

Even before claimants sued Frank, Erie had already filed this case on October 16, 2020.  Dkt. 1.  Plaintiff asks this Court to relieve it from any obligation to indemnify Frank and defend him against claimants' suit.  *See generally, id.*, *passim*.  Claimants responded with a counterclaim arguing that plaintiff should be required to defend Frank due to its failure to timely disclaim coverage.  Dkt. 10.  Frank and claimants moved for summary judgment on December 15, 2021.  Dkts. 31; 32.  Plaintiff filed a summary judgment motion of its own on December 17, 2021.  Dkt. 33.  This decision now follows.

## III.  <u>LEGAL STANDARD</u>

Summary judgment under Rule 56 is warranted if the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## IV. **DISCUSSION**

Under New York law, an insurer presented with a personal injury claim has sixty days from its receipt of a written coverage request to inform the insured whether the incident at issue will be covered and to sketch out the applicable coverage limits.  N.Y. INS. LAW § 3420(d) ("§ 3420(d)").  By extension, an insurer must notify its insured promptly if it plans on denying coverage based on a policy exclusion blocking a claim that the policy would otherwise cover. *United States Underwriters Ins. Co. v. Image by J&K, LLC*, 335 F. Supp. 3d 321, 343 (E.D.N.Y. 2018).

9

That rule serves to protect the insured and the injured alike by guaranteeing that they promptly know the contours of coverage.

*NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010).  An insurance carrier's failure to timely disclaim coverage based on a policy exclusion carries a heavy penalty: the insurer is foreclosed from disclaiming coverage.  *Id.*

An insured is under no obligation to establish prejudice to justify this remedy.  *Montpelier U.S. Ins. Co. v. 240 Mt. Hope Realty Co.*, 2015 WL 6395949, at *2 (S.D.N.Y. Oct. 22, 2015).  Rather, the only question is whether the delay was unreasonable.  *Id.*  Denying coverage based on an exclusion is unreasonable unless that denial comes "as soon as is reasonably possible."  *Golden Ins. Co. v. Ingrid House, Inc.*, 538 F. Supp. 3d 293, 302 (S.D.N.Y. 2021).

However, "[w]here the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage."

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004).  In that case, the reasonableness of any delay is "judged from the time that the insurer is aware of sufficient facts to issue a disclaimer."

*Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002).  Thus, a delay caused by a "reasonably prompt, thorough, and diligent

investigation of the claim" does not bar an insurance carrier from disclaiming coverage. *Webster ex rel. Webster v. Mt. Vernon Fire Ins. Co.*, 368 F.3d 209, 216-17 (2d Cir. 2004).

"No particular time is deemed undue delay," but instead the timeliness of a disclaimer is a fact question based on the totality of the circumstances. *Golden Ins. Co.*, 538 F. Supp. 3d at 302.  However, sometimes that totality is clear enough that an insurer's delay can be established as a matter of law. *Id.*  In particular, a delay of at least two months with "absolutely no explanation" typically runs afoul of the obligation to timely disclaim coverage. *Id.*  And "any explanation by the insurer for its delay will be insufficient as a matter of law" where the basis for the disclaimer was, or should have been, readily apparent before the delay began.  *Id.*

In fact, even "[w]here the basis was not readily apparent, an unsatisfactory explanation will render the delay unreasonable as a matter of law." *Golden Ins. Co.*, 538 F. Supp. at 302.

Though Frank and claimants argue that Erie's investigation into the ownership of the McKay family boat was sloppy enough from the start to run afoul of § 3420(d)'s timeliness requirement, in particular they object to the delay after Weber received claimants' attorney's letter.

It is not hard to see why Frank and claimants object.  Even reading the facts as charitably to Erie as possible, Merkel had the letter in his hands on

January 27, 2020, but no employee of plaintiff's even began to look into the boat's ownership until May 27, 2020, four months later.  CSMF ¶ 20; Merkel Tr. 22.  Then, the formal disclaimer of coverage did not come about for another month, until June 26, 2020.  DSMF ¶ 14.

In response to this argument, Erie denies that claimants' counsel's letter triggered any obligation on its part to deny coverage.  Plaintiff is correct, after a fashion.  The Court would not have expected plaintiff to immediately disclaim coverage based only on the letter.  But at the very least, the letter's plainly identifying Frank as Mr. McKay, describing Mr. McKay as the owner of the boat, and only referring to Michael as Mr. McKay's brother and only introducing him well after calling Mr. McKay the boat's owner triggered an obligation for plaintiff to get to the bottom of the boat's ownership. Dkt. 32-15, p. 2.

The question, then, is whether Erie's investigation into the boat's ownership was reasonably prompt, thorough, and diligent.  *Webster ex rel. Webster*, 368 F.3d at 216.  It was not, as a matter of law.

Even resolving every disputed fact in Erie's favor, it based its belief that Frank did not own the boat entirely on Robin's statement to that effect on August 22, 2018.  Weber Tr. 24.  That statement was not contemporaneously recorded.  *Id.* at 22-23.  Nor did any of plaintiff's employees make any

overtures to verify that statement until May 27, 2020, nearly two years later. CSMF ¶ 20; Merkel Tr. 22.

Even assuming that Erie was justified in putting its every egg in Robin's basket for most of those two years, claimants' counsel's letter presented them with a clear indication that Frank owned the boat.  Dkt. 32-15, p. 2. Contrary to plaintiff's arguments, it would not be expecting it to "read tea leaves" to decipher the only straightforward reading of that letter: that Frank was an owner of the boat.  *See id.*

Of course, that one letter by itself would not trigger a duty to disclaim, because Erie still did not have a good-faith basis to do so.  *See Webster ex rel. Webster*, 368 F.3d at 216 (explaining that time to disclaim begins to run once insurer has enough information to disclaim coverage in good faith).  But it should have been more than enough to make plaintiff realize that the boat's ownership was not nearly so straightforward as its muted efforts had led it to believe.  Plaintiff has completely failed to give a satisfactory explanation for why it failed to dig into the facts sooner, and thus the delay was unreasonable as a matter of law.  *Golden Ins. Co.*, 538 F. Supp. at 302.

Even so, the five-month delay between Merkel's receipt of claimant's counsel's letter and Erie's disclaimer of coverage may have been excusable if it had been necessary to diligently investigate the boat's ownership.  *Webster ex rel. Webster*, 368 F.3d at 216-17.  However, once plaintiff decided to

13

seriously investigate the question, it took only five days to get an answer. Merkel Tr. 22.

In that light, that five-month investigation can in no way be considered reasonably prompt. *Webster ex rel. Webster*, 368 F.3d at 216-17. Because Erie could have found out that Frank owned the boat in five short days and has provided no explanation as to why it took four months for it to even begin to conduct that investigation, plaintiff's delay was unreasonable as a matter of law. *Golden Ins. Co.*, 538 F. Supp. 3d at 302 (noting that two-month delay after facts giving rise to disclaimer could have been available without effective explanation is per se unreasonable).

Frank and claimants' motions for summary judgment must therefore be granted, and Erie is precluded from disclaiming coverage in this matter. *See, e.g., City Club Hotel, LLC*, 369 F.3d at 107-09 (holding that four-to-five-month delay in investigating insurance coverage was unreasonable as matter of law).

## V. **CONCLUSION**

Erie's investigation into the McKay claim was something of a cascade fire: a series of confounding decisions with disastrous consequences. The entire enterprise became far more complicated than it needed to be because of a nearly complete failure by any of plaintiff's employees to diligently investigate whether claimants' personal injury claim was excluded under the

policy's terms.  Question of fact or no, this debacle was more than significant enough to preclude plaintiff from disclaiming coverage as a matter of law. Consequently, summary judgment for Frank and claimants must follow.

Therefore, it is

ORDERED that

1.  Plaintiff Erie Insurance Company's motion for summary judgment is DENIED;

2.  Defendant Frank McKay and claimants William Lansbury and Amy McKay's motions for summary judgment are GRANTED;

3.  Plaintiff Erie Insurance Company is precluded from disclaiming coverage including defense and indemnification for defendant Frank McKay regarding claimants' William Lansbury and Amy McKay's ongoing state law claims; and

4.  Defendant Frank McKay is also entitled to reimbursement from plaintiff Erie Insurance Company for all reasonable attorney's fees and costs incurred defending against the state law claims.

IT IS SO ORDERED.

Dated:  February 1, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge